J-S27037-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MARK M. RING, | |
| Appellant | No. 1238 MDA 2015 |

Appeal from the PCRA Order June 17, 2015
In the Court of Common Pleas of Luzerne County
Criminal Division at No(s): CP-40-CR-0004097-2006

BEFORE:  SHOGAN, J., DUBOW, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED APRIL 28, 2016**

This is a *pro se* appeal from the order entered in the Court of Common Pleas of Luzerne County by the learned Judge Joseph Augello dismissing Appellant Mark M. Ring's ("Appellant") motion for post-conviction DNA testing.  We affirm.

After returning home from work at 4:00 a.m. on July 4, 2006, 53 year-old Joseph Tarreto ("Tarreto") took his dog for a walk in the back yard as was his recent routine.  N.T. (Preliminary Hearing), October 4, 2006, at 8-9. His fiancée, Elizabeth Powell, was in the kitchen as Tarreto walked out, and she heard him cry out in pain just seconds later before saying "he's back." *Id.* at 9.  Powell knew immediately Tarreto was referring to Appellant, as the two men had a history of feuding and had engaged in a physical altercation several days earlier.  *Id.* at 24-25.

*Former Justice specially assigned to the Superior Court.

Powell ran to the back door and looked out into the well-illuminated back yard, where she saw a man wearing a dark colored baseball hat and a white painter's mask striking down at Tarreto with an aerosol paint can as Tarreto assumed a defensive posture with his arms held up. *Id.* at 9-10, 31. Powell intervened and recognized the assailant as Appellant when his mask came down. *Id.* at 10. In the time it took Appellant to subdue Powell, Tarreto was able to come from behind Powell and push Appellant away from her and toward the rear of the yard, where the two men entered an adjacent grassy area leading to a cindered lot belonging to the Plains Township Ambulance Association. *Id.* at 12-13, 26-27.

Seconds later, Powell heard Tarreto yell in disbelief "he has a gun." *Id.* at 13. Powell looked up and saw a flash as she heard a gunshot, followed by Tarreto saying "he shot me." *Id.* at 13. Powell watched as Appellant fired two more shots into Tarreto, who fell first to his knees and then face-down to the ground. *Id.* at 13-14, 16. Powell ran to call for emergency assistance. *Id.* at 14.

Tarreto lay dead at the scene when authorities arrived. William Lisman, Chief Deputy Coroner of Luzerne County, testified he had attended an autopsy performed on Tarreto which revealed not only three gunshot wounds but also multiple abrasions, bruises, and lacerations on Tarreto's face, scalp, chest, back, and arms. *Id.* at 50-52. Lisman recalled how the doctor performing the autopsy noted one such injury, a rectangular shaped

injury to Tarreto's back, was consistent with the shape of a wooden spindle recovered from the crime scene.  *Id.* at 56-57.

Pursuant to a negotiated plea agreement, Appellant pled guilty on March 17, 2007, to one count of murder in the third degree, 18 Pa.C.S.A. § 2502(c), and received a sentence of 12 to 24 years of incarceration.  He filed neither post-sentence motions nor a direct appeal.

Appellant subsequently filed a timely first petition under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546, asserting ineffective assistance of plea counsel.  The PCRA court entered an order denying relief, this Court affirmed the order, *see Commonwealth v. Ring*, 996 A.2d 554 (Pa.Super. 2010) (unpublished memorandum at 1-2), and the Supreme Court of Pennsylvania denied allowance of appeal.  *See id.*, *appeal denied*, 5 A.3d 819 (Pa. 2010).  Appellant filed a second PCRA petition asserting after-discovered evidence relating to the Pennsylvania Supreme Court's order vacating all juvenile system adjudications made in a five-year period by former Judges Mark Ciavarella and Michael Conahan. Specifically, Appellant sought vacation of the order appointing PCRA counsel in his first PCRA challenge because it had been entered by disreputed Judge Ciavarella.  The PCRA court dismissed Appellant's second petition, and we affirmed.  *Commonwealth v. Ring*, ____ A.3d. _____, No. 718 MDA 2014 (Pa.Super. filed January 13, 2015).

On March 6, 2014, while Appellant's second PCRA appeal was pending, Appellant filed a motion for post-conviction DNA testing pursuant to 42

Pa.C.S.A. § 9543.1.[1]  Specifically, Appellant sought so-called "Touch DNA"

testing[2] of the wooden spindle to establish Tarreto had held the spindle, a

_____

[1] The statute that governs post-conviction DNA testing provides, in relevant part:

**§ 9543.1. Postconviction DNA testing**

**(a) Motion.**—

(1) An individual convicted of a criminal offense in a court of this Commonwealth and serving a term of imprisonment or awaiting execution because of a sentence of death may apply by making a written motion to the sentencing court for the performance of forensic DNA testing on specific evidence that is related to the investigation or prosecution that resulted in the judgment of conviction.

(2) The evidence may have been discovered either prior to or after the applicant's conviction.  The evidence shall be available for testing as of the date of the motion.  If the evidence was discovered prior to the applicant's conviction, the evidence shall not have been subject to the DNA testing requested because the technology for testing was not in existence at the time of the trial or the applicant's counsel did not seek testing at the time of the trial in a case where a verdict was rendered on or before January 1, 1995, or the applicant's counsel sought funds from the court to pay for the testing because his client was indigent and the court refused the request despite the client's indigency.

\*\*\*

**(c) Requirements.—In any motion under subsection (a), under penalty of perjury, the applicant shall:**

(1)(i) specify the evidence to be tested;
\*\*\*
(2)(i) assert the applicant's actual innocence of the offense for which the applicant was convicted; and
\*\*\*
(3) present a prima facie case demonstrating that the:
*(Footnote Continued Next Page)*

test result which, Appellant claims, would prove he shot Tarreto in self-defense and would warrant vacation of his judgment of sentence and a remand for new proceedings.  The PCRA court entered an order holding

*(Footnote Continued)* _____

(i) identity of or the participation in the crime by the perpetrator was at issue in the proceedings that resulted in the applicant's conviction and sentencing; and
(ii) DNA testing of the specific evidence, assuming exculpatory results, would establish:
(A) the applicant's actual innocence of the offense for which the applicant was convicted;
* * *

**(d) Order.**—

(1) Except as provided in paragraph (2), the court shall order the testing requested in a motion under subsection (a) under reasonable conditions designed to preserve the integrity of the evidence and the testing process upon a determination, after review of the record of the applicant's trial, that the:

(i) requirements of subsection (c) have been met;
***
(ii) motion is made in a timely manner and for the purpose of demonstrating the applicant's actual innocence and not to delay the execution of sentence or administration of justice.

(2) The court shall not order the testing requested in a motion under subsection (a) if, after review of the record of the applicant's trial, the court determines that there is no reasonable possibility that the testing would produce exculpatory evidence that:

(i) would establish the applicant's actual innocence of the offense for which the applicant was convicted;

****
42 Pa.C.S. § 9543.1(a), (c), (d).

[2] We describe Touch DNA testing more fully, *infra*.

Appellant's motion pending determination of Appellant's PCRA appeal. After this Court affirmed the order denying PCRA relief on Appellant's second petition, the PCRA court issued an intention to dismiss Appellant's motion for DNA testing without a hearing pursuant to Pa.R.Crim.P. 907. Appellant filed objections, and the court ordered the Commonwealth to file a response, which the court received on May 21, 2015.

Upon review of the record, Appellant's objections, and the Commonwealth's response, the court entered an order dismissing Appellant's motion for post-conviction DNA testing, positing that he did not meet the requirements of section 9543.1. First, the court determined Appellant acted with unreasonable delay by waiting 7 years after his 2007 sentencing to seek palm/fingerprint "Touch DNA" testing of a wooden spindle of which he was aware at the time of his guilty plea. "This delay is unreasonable in light of the totality of the history of the case." PCRA Court Opinion, dated June 16, 2015, at 2.

Furthermore, the court continued, Appellant could not satisfy the provisions of section 9543.1(c)(3)(i), which required Appellant to present a *prima facie* case demonstrating his identity or participation in the crime was at issue in the proceedings that resulted in his conviction and sentencing. "[Appellant's] conviction rests upon his guilty plea, not on identification evidence [produced at a trial]," the court noted. Nor was Appellant's participation in the crime at issue, the court reasoned, as "[his] petition

indicates that [he] seeks DNA testing as evidence of self-defense." *Id.* This timely appeal followed.

"[W]hen examining the propriety of an order resolving a request for DNA testing, we employ the PCRA standard of review." *Commonwealth v. Gacobano*, 65 A.3d 416, 419 (Pa.Super. 2013). "Our standard of review regarding a PCRA court's order is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error." *Commonwealth v. Garcia*, 23 A.3d 1059, 1061 (Pa.Super. 2011). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." *Id.*

Appellant argues his motion for DNA testing was not a PCRA petition and the court should not have dismissed it as an untimely serial petition under section 9545(b)(1). He contends the DNA evidence he seeks would prove he shot his victim in self-defense, he is entitled to such DNA testing, and the court improperly denied him of his constitutional rights to obtain such testing. We disagree.

Initially, we note that motions for post-conviction DNA testing "are clearly separate and distinct from claims brought pursuant to other sections of the PCRA." *Commonwealth v. Williams*, 35 A.3d 44, 50 (Pa.Super. 2011) (quoting *Commonwealth v. Perry*, 959 A.2d 932, 938 (Pa.Super. 2008)). "This Court has consistently held the one-year jurisdictional time bar of the PCRA does not apply to motions for DNA testing under Section 9543.1." *Id.* (internal citations omitted).

It is clear that, to the extent the PCRA court deemed Appellant's motion untimely, it did so not pursuant to the timeliness provisions of the PCRA's section 9545(b)(1) but, instead, pursuant to section 9543.1(d)(1)(iii), which provides the court shall order testing only after, *inter alia*, reviewing the record and making a determination that the motion has been made in a timely manner.

According to the PCRA court, Appellant was aware of the existence of the spindle for at least seven years prior to filing this motion for DNA testing and, for that reason, was untimely in making his present request. However, because the court did not address Appellant's contention that the type of DNA testing requested was relatively new, we decline to affirm on this basis. Instead, we examine whether Appellant met the threshold requirements to obtain DNA testing and, if he did, whether Appellant carried his statutory burden to make a *prima facie* case, first, that his participation in the crime was at issue in the proceedings resulting in his conviction and, second, that the DNA evidence, assuming exculpatory results, would establish his actual innocence of the crime.

> When reviewing an order denying a motion for post-conviction DNA testing, this Court determines whether the movant satisfied the statutory requirements listed in Section 9543.1. We can affirm the court's decision if there is any basis to support it, even if we rely on different grounds to affirm.

**Williams**, 35 A.3d at 47 (internal citations omitted).

Regarding the post-conviction DNA statute, we observe:

The statute sets forth several threshold requirements to obtain DNA testing: (1) the evidence specified must be available for testing on the date of the motion; (2) if the evidence was discovered prior to the applicant's conviction, it was not already DNA tested because (a) technology for testing did not exist at the time of the applicant's trial; (b) the applicant's counsel did not request testing in a case that went to verdict before January 1, 1995; or (c) counsel sought funds from the court to pay for the testing because his client was indigent, and the court refused the request despite the client's indigency. Additionally, ... [u]nder section 9543.1(c)(3), the petitioner is required to present a *prima facie* case that the requested DNA testing, assuming it gives exculpatory results, would establish the petitioner's actual innocence of the crime. Under section 9543.1(d)(2), the court is directed not to order the testing if it determines, after review of the trial record, that there is no reasonable possibility that the testing would produce exculpatory evidence to establish petitioner's actual innocence. From the clear words and plain meaning of these provisions, there can be no mistake that the burden lies with the petitioner to make a *prima facie* case that favorable results from the requested DNA testing would establish his innocence. We note that the statute does not require petitioner to show that the DNA testing results would be favorable. However, the court is required to review not only the motion for DNA testing, but also the trial record, and then make a determination as to whether there is a reasonable possibility that DNA testing would produce exculpatory evidence that would establish petitioner's actual innocence. We find no ambiguity in the standard established by the legislature with the words of this statute.

*Id.* at 49–50.

First, we find that Appellant does not meet the threshold requirements for post-conviction DNA testing under 42 Pa.C.S. § 9543.1(a)(2). As is evident from the statute, a petitioner may obtain post-conviction DNA testing of evidence discovered prior to the petitioner's conviction upon making a threshold showing that:

- 9 -

the evidence shall not have been subject to the DNA testing requested because the technology for testing was not in existence at the time of the trial or the applicant's counsel did not seek testing at the time of the trial in a case where a verdict was rendered on or before January 1, 1995, or the applicant's counsel sought funds from the court to pay for the testing because his client was indigent and the court refused the request despite the client's indigency.

42 Pa.C.S. § 9543.1(a)(2). A petitioner, therefore, "does not meet the requirements of § 9543.1(a)(2) [if] the technology existed at the time of his trial, the verdict was rendered after January 1, 1995, and the court never refused funds for the testing." *Commonwealth v. Williams*, 899 A.2d 1060, 1063 (Pa. 2006).

Appellant fails to substantiate his otherwise bald assertion that "Touch DNA"—a process by which DNA may be extracted from small amounts of skin cells shed upon objects—represents a new investigation technology that did not exist at the time of his guilty plea. Our research reveals that Touch DNA was first developed in 1997 and first used by investigators in the United States by 2003.

> The touch DNA method—named for the fact that it analyzes skin cells left behind when assailants touch victims, weapons or something else at a crime scene—has been around for the last five years. In fact, the prosecutor in the [Jon Benet] Ramsey case, Boulder County District Attorney Mary Lacy, learned about touch DNA when she attended a course here at the West Virginia University Forensic Science Initiative in the summer of 2007.

Scientific American, "What is Touch DNA?," August 8, 2008. Under section 9543.1(a)(2), Appellant was required to show that the spindle was not Touch DNA-tested because "technology for testing did not exist at the time

- 10 -

of trial." It appears such technology for testing did, in fact, exist at the time Appellant entered his guilty plea. Without so much as arguing the technology was so infrequently used or not yet generally accepted in our jurisdiction as to have been unavailable and, effectively, nonexistent in that sense, Appellant has failed to satisfy the threshold requirements of 9543.1(a)(2). *Perry*, 959 at 938-39 (affirming on section 9543.1(a)(2) threshold conditions).

Even if we were to assume, *arguendo*, Touch DNA was not available at the time of his guilty plea so as to prohibit the conclusion that the technology existed for purposes of section 9543.1(2)(a), Appellant's motion would nevertheless falter under section 9543.1(c)(3) review. Specifically, Appellant has not made a *prima facie* case under either subsection (c)(3)(i), that his participation in the crime was at issue in the proceedings below leading to his conviction, or under subsection (c)(3)(ii)(A), that Touch DNA results would establish his actual innocence.

In *Williams v. Erie County Dist. Atty's Office*, 848 A.2d 967, 972 (Pa.Super. 2004), *appeal denied*, 864 A.2d 530 (Pa. 2004), a three-judge panel of this Court unanimously held that "the language of § 9543.1 clearly precludes that section's application to petitioners seeking to challenge convictions resulting in guilty pleas by reference to DNA evidence." In so holding, the panel reasoned a defendant who pled guilty could not demonstrate that his identity or participation in the crime was at issue at the guilty plea proceedings:

> In light of this language [found in section 9543.1(c)], we are constrained to interpret § 9543.1 to preclude application to an applicant who has pleaded guilty. Subsection 9543.1(c)(3) requires the applicant to demonstrate that the "identity of or the participation in the crime by the perpetrator was at issue in the proceedings that resulted in the applicant's conviction." *Id.* § 9543.1(c)(3)(i). We fail to see how this mandatory element of an applicant's *prima facie* case can be demonstrated where he pleaded guilty, thus nullifying any subsequent claim that the "identity of or the participation in the crime by the perpetrator was at issue." *Cf.* [*Commonwealth v.*] *Guth*, 735 A.2d [709,] 711 n. 3. Indeed, on the plain language of the statute, such a claim also must fail because we do not read the statute's use of "proceedings" to encompass negotiations between the prosecution and the defense regarding plea bargains.

*Id.* at 972. "It is axiomatic that a three-judge panel is bound by previous panel opinions unless overruled by this Court sitting *en banc,* our Supreme Court, or the United States Supreme Court." *Commonwealth v. Pepe*, 897 A.2d 463, 465 (Pa.Super. 2006) (citation omitted), *cert. denied*, *Pepe v. Pennsylvania,* 566 U.S. 881 (2008). Accordingly, we find Appellant is not entitled to relief on this basis.

Nor has Appellant demonstrated that Touch DNA results placing the spindle in Tarreto's hand would establish his actual innocence. In order to establish a defendant's actual innocence, "the newly discovered evidence must make it 'more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt.' ... [T]his standard requires a reviewing court 'to make a probabilistic determination about what reasonable, properly instructed jurors would do,' if presented with the new

evidence." ***Commonwealth v. Conway***, 14 A.3d 101, 109 (Pa.Super. 2011) (quoting ***Schlup v. Delo***, 513 U.S. 298, 329 (1995)).

The gist of Appellant's contention is that if Touch DNA testing of the wooden spindle recovered 25 feet from Tarreto's body at the crime scene confirms Tarreto held the spindle, then it would provide previously unavailable evidence that Tarreto posed a threat of serious bodily harm to Appellant at the time Appellant fired the fatal gunshots. Appellant argues that such evidence "would have affected the outcome of a trial as it would have created a reasonable doubt Ring acted with malice, . . . an element of third degree murder." Appellant's brief at 22.

What Appellant fails to address, however, is that the circumstances surrounding his shooting of Torreto were generally inconsistent with his having done so in self-defense. A disguised Appellant ambushed Torreto in his own yard, beat him about the head and body with the butt end of a metal spray can, and assaulted Ms. Powell in her attempt to come to Torreto's aid.[3] As for the wooden spindle itself, autopsy observations matched at least one of Torreto's wounds with the spindle, the spindle was

---

[3] "Generally, the use of force 'is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force' by another. 18 Pa.C.S. § 505(a). However, deadly force is not justified when the defendant provoked the use of force against himself. ***Id.,*** § 505(b)(2)(i)." ***Commonwealth v. Houser***, 18 A.3d 1128, 1139 (Pa. 2011).

discovered approximately 25 feet away from where Tarreto was shot and fell, and Ms. Powell testified that she did not observe Tarreto holding anything at the time he was shot.

Even assuming Touch DNA results would place the spindle in Tarreto's hand at some point, as we must assume under the subsection (c)(3)(ii)(A) analysis, we nevertheless conclude the totality of evidence is wholly inconsistent with a self-defense narrative portraying Tarreto as a spindle-wielding aggressor who placed Appellant in legitimate fear of serious bodily injury warranting the use of deadly force. Given the circumstances, we discern no indication in the record that Touch DNA evidence would have made it "more likely than not that no reasonable juror would have found Appellant guilty beyond a reasonable doubt." It follows, therefore, that Appellant cannot establish actual innocence as required under the DNA statute, and we would, thus, agree with the PCRA court's conclusion on this point.

For all the foregoing reasons, we affirm the order denying Appellant's request for DNA testing.

Order is AFFIRMED.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/28/2016

- 14 -